**Lionel MARQUEZ, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 91 Civ. 6244(MEL).**

United States District Court, S.D. New York.

March 20, 1992.

Lawrence Mark Stern, New York City, for petitioner.

Otto G. Obermaier, U.S. Atty., S.D.N.Y. (Gaines H. Cleveland, Asst. U.S. Atty., of counsel), New York City, for respondent.

LASKER, District Judge.

■ Lionel Marquez seeks habeas relief pursuant to 28 U.S.C. § 2255, on the grounds (i) that his conviction was barred by the Fifth Amendment's prohibition of double jeopardy and (ii) that the government was collaterally estopped from prosecuting him in the case from which his conviction arises.[1] Marquez was convicted in 1975 of possession with intent to distribute cocaine on the basis of a cocaine transaction which occurred on August 22, 1972. He appealed his conviction on grounds of double jeopardy and collateral estoppel, among others. The Court of Appeals denied his appeal without opinion on March 4, 1976. In 1990, the United States Supreme Court decided *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), a decision which fundamentally changed the nature of double jeopardy analysis. Marquez contends that *Grady* effected a substantial change in the law which requires rehearing of his double jeopardy claim. The government's response is twofold: First, that these claims may not be reheard by this Court since they have already been definitively decided against the petitioner by the Court of Appeals. Second, that even assuming the claims are cognizable, *Grady* does not require setting aside Marquez's conviction on the grounds of double jeopardy.

The petition is denied.

## I.

Marquez contends that the 1975 prosecution substantially duplicated a 1974 prosecution in which he was acquitted on charges of conspiracy to import and distribute cocaine between 1971 and 1974, and substantive offenses of distributing cocaine and possessing cocaine with the intent to distribute it.

The facts are largely uncontested. Marquez was indicted in 1974 and again in 1975

---

1. As applied to criminal prosecutions, the doctrine of collateral estoppel precludes the government from relitigating in a subsequent prosecution, an issue "necessarily decided in [defendant's] favor by the prior verdict." *See United States v. Citron*, 853 F.2d 1055, 1058 (2d Cir. 1988).

for narcotics offenses in connection with alleged conspiracies to import and distribute cocaine. In both indictments, Marquez was alleged to have conducted a number of cocaine transactions with Lina Gotes, a co-defendant in the first case. According to the government, Lina Gotes served as the New York contact for a drug ring which imported cocaine from Chile. Marquez was alleged to have been one of her regular buyers.

In early 1974, Gotes was the subject of an undercover probe by the Drug Enforcement Agency ("DEA"). Following her arrest, Gotes spoke on several occasions with agents of the DEA about her knowledge of various narcotics activities. These interviews came to form the basis for the indictment the government brought against Marquez, Gotes and sixteen other defendants on July 2, 1974. The indictment alleged one count of conspiracy to violate the federal narcotics laws and four substantive counts of cocaine distribution or possession with intent to distribute cocaine.[2] Although the conspiracy was described as beginning on July 1, 1971, all of the overt acts alleged in the 1974 indictment occurred between May 1973 and April 1974. In addition, all four of the substantive counts were based on incidents which occurred between May 1973 and April 1974. After a two week trial, on December 14, 1974, the jury acquitted Marquez on all counts.

On July 18, 1975, a second indictment of Marquez was filed. This indictment included a conspiracy count (covering the period July 1, 1972 to December 31, 1972) and two substantive counts of distribution of cocaine and possession with intent to distribute cocaine (occurring in August and November 1972). On October 27, 1975, Marquez was found guilty on Count Two, a substantive count which alleged possession with intent to distribute cocaine on August 22, 1972.

The 1974 prosecution was thus directed at events that took place in 1973 and 1974, whereas, the 1975 indictment focused on events in 1972. Marquez concedes that the incidents which formed the basis of the 1975 prosecution are different from the incidents upon which the 1974 prosecution was based. Nevertheless, he contends that he is entitled to relief because in 1974 the government already had in its possession the evidence relating to the 1972 incidents and could have prosecuted them in the 1974 indictment and trial if it had chosen to do so.

The parties agree that on November 27, 1974, five days before the trial of the 1974 indictment began, Gotes made known to an agent of the DEA, apparently for the first time, that Marquez had done narcotics transactions with her in 1972. During that interview, Gotes told the DEA agent that a man named Sergio Castillio was present at one of these 1972 transactions. Castillio was located by the DEA on November 29, 1974, and was interviewed at the office of the United States Attorney on the Saturday and Sunday before the Monday (December 2, 1974) when trial was scheduled to begin. At that time, Castillio described to the DEA agents an alleged cocaine transaction which occurred in his apartment in August 1972 in which Marquez and others purchased cocaine. Although Castillio spoke with members of the United States Attorney's office on several occasions in the course of the two week 1974 trial and was prepared as a witness, he was never called and no mention of the 1972 transactions was ever made in the course of that trial.

The August 1972 transaction ultimately became the basis for Count Two of the 1975 indictment, of which Marquez was convicted. This is the conviction he now moves to set aside. The government has submitted several affidavits by the prosecutors and DEA agent involved in the case, explaining that the decision not to include the 1972 transaction in the 1974 indictment

---

**2.** These charges were originally contained in Indictment 74 Cr. 576, filed June 6 1974. On November 4, 1974, Gotes pleaded guilty to three counts of Indictment 74 Cr. 576. On November 20, 1974, however, Indictment 74 Cr. 576 was superseded by Indictment 74 Cr. 1093. The superseding indictment dropped one of the substantive counts and made some changes in the overt acts set forth in the conspiracy count but was otherwise identical.

was prompted by the shortness of time available and Lina Gotes' continuing unwillingness to testify voluntarily against Marquez. Marquez strongly disputes this characterization, however, asserting that the government had sufficient evidence to put the August 1972 transaction before the jury in 1974 but decided "to sit on a portion of it's [sic] case, holding that portion in reserve should it fail to persuade the first jury of Petitioner's alleged 'guilt.'"

Before the 1975 trial, Marquez moved this Court to dismiss the indictment on double jeopardy and other grounds. The motion was denied.[3] Marquez was convicted, and the Court of Appeals affirmed the conviction without opinion. *United States v. Marquez*, 535 F.2d 1244 (2d Cir.1976).

## II.

As a threshold matter, it must be determined whether the issues raised in Marquez's present petition may be reheard, since the substance of his claims was considered and denied in his appeal to the Second Circuit for his 1975 conviction. As a general rule, "once a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under section 2255." *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir.), *cert. denied*, 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977). However, the Supreme Court has held that even though the legal issue raised in a § 2255 motion "was determined against [the applicant] on the merits on a prior application," "the applicant may [nevertheless] be entitled to a new hearing upon showing an intervening change in the law...." that is germane to his claim. *Sanders v. United States*, 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963); *see also Davis v. United States*, 417 U.S. 333, 342, 94 S.Ct. 2298, 2303, 41 L.Ed.2d 109 (1974) (holding that the *Sanders* rule also applies when the prior determination was made on direct appeal from the appli-

cant's conviction); *Natelli*, 553 F.2d at 7 (noting that where there is an intervening change in law, petitioner may seek § 2255 relief).

On the appeal from the 1975 conviction, the Court of Appeals was presented with both the double jeopardy and collateral estoppel claims which Marquez raises here. The court ruled against him. Marquez points to no change in the law since 1976 with respect to his collateral estoppel claim. Accordingly, that claim is denied.

Marquez's argument that his double jeopardy claim should be reexamined, however, has merit. According to Marquez, the Supreme Court's recent decision in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), represents an "intervening change in the law" that is relevant to his claim. Before *Grady*, the test as to whether double jeopardy had occurred was whether the offense charged in a subsequent prosecution "requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The *Grady* court held that even if the *Blockburger* test were met, a subsequent prosecution violated double jeopardy if "the government will prove *conduct that constitutes an offense* for which the defendant has already been prosecuted." *Grady v. Corbin*, 495 U.S. at 521, 110 S.Ct. at 2093 (emphasis added). Thus *Grady* clearly altered double jeopardy analysis, changing the focus from the statutory offense charged to the conduct at issue. Marquez is therefore entitled to reconsideration of his double jeopardy claim.[4]

## III.

Marquez asserts that under *Grady*, his 1975 conviction violated the double jeopardy clause of the Fifth Amendment. *Grady* involved a drunk driving incident which

---

3. This Court stated: "From the face of each indictment it appears that the crimes and facts alleged in the earlier indictment are separate and distinct from the crimes and facts presently alleged." Order of October 8, 1975.

4. Neither the Supreme Court nor the Court of Appeals of this Circuit has ruled as to whether *Grady* should be applied retroactively. It is unnecessary to decide that point in the instant case in view of the determination specified below that Marquez's claim is without merit.

resulted in a collision and the death of an individual. The defendant was originally charged solely with the misdemeanor of driving while intoxicated, to which he pled guilty. Later he was charged with reckless manslaughter, criminally negligent homicide, and third-degree reckless assault based on the same incident that had given rise to the misdemeanor conviction. The Supreme Court ruled that the subsequent prosecution was barred by the double jeopardy clause. The critical issue, the court held, was whether, in the second prosecution, the government would prove *conduct* for which the defendant had already been tried, regardless of the statutory composition of the offenses: "[T]he Double Jeopardy Clause bars a subsequent prosecution, if to establish an essential element of the crime charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady v. Corbin*, 495 U.S. 508, 521, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548 (1990).

The crux of Marquez's argument is that the double jeopardy clause applies when charges which could have been brought in an earlier prosecution, are nevertheless specified in separate indictments. He contends that when a drug conspiracy is charged in an earlier indictment, acts which fall within the time period of that conspiracy and constitute narcotics related offenses are barred from later prosecution regardless of whether they were actually charged or proved under the first indictment.

The 1975 prosecution, according to Marquez, was the government's second shot at the conviction it failed to obtain in 1974. He contends that the 1975 prosecution was a replay of the 1974 case because although Marquez and Gotes were not named as defendants to the conspiracy count, they were named as co-conspirators and thus were just as deeply implicated in the conspiracy as if they had been defendants— coloring the jury's determination of Mar-

quez' guilt on the substantive counts. He points out that the story told by the government in both the 1974 and 1975 prosecutions was essentially the same, and the alleged modus operandi, as well as the claimed statutory violations are identical.

The parties agree that the relevant case law consists of *Grady* and two recent decisions of the Court of Appeals of this Circuit interpreting *Grady* in the context of multiple crimes: *United States v. Calderone*, 917 F.2d 717 (2d Cir.1990) and *United States v. Russo*, 906 F.2d 77 (2d Cir.1990). *Grady v. Corbin* does not definitively answer the question raised by the present petition since it involved a single occurrence crime and did not chart the implications of its holding for multiple crimes, the principal issue here. On the other hand, *Russo* and *Calderone* directly address the questions raised by the present petition. Neither of them supports petitioner's position.

In *United States v. Russo*, 906 F.2d 77 (2d Cir.1990), the Second Circuit held that conduct alleged as an overt act in one prosecution may not be charged as a substantive offense in a subsequent prosecution. *Russo*, 906 F.2d at 78.[5] In that case, the government had procured the conviction of a defendant in a second prosecution for the identical acts of obstruction of justice which had served as a predicate act in a prior RICO prosecution against him. The obvious distinction between this case and *Russo* is that, here, the events prosecuted in the 1974 prosecution were never mentioned much less included in the indictment in the first action. Although it alleged a conspiracy between 1971 and 1974, the 1974 indictment focused exclusively on events in 1973 and 1974, whereas, the 1975 prosecution dealt exclusively with incidents which occurred in 1972. Thus *Russo* provides no support for petitioner.

In *United States v. Calderone*, 917 F.2d 717 (2d Cir.1990), the primary issue was whether, under *Grady v. Corbin*, the

---

**5.** *Russo* was a *nolle prosequi* case in which the government moved to vacate a guilty verdict after *Grady* was decided, conceding that the prosecution of the obstruction of justice charges

following acquittal of the RICO conspiracy was inconsistent with the "conduct" test laid out in *Grady*. The Second Circuit granted the motion.

government could prosecute in a subsequent prosecution a "subset" of a conspiracy prosecuted in an earlier case. In *Calderone*, after failing to obtain a conviction on an indictment alleging international drug trafficking in heroin, cocaine, and marijuana, among other drugs, with a large cast of defendants, the government brought a second case against a smaller group of the earlier defendants alleging a conspiracy to distribute heroin only, but essentially relying on the same overt acts and charging conduct that allegedly occurred within the time period of the conspiracy charged in the first indictment. The court held that the second prosecution violated the double jeopardy clause. In his concurring opinion, Judge Newman explained, "[a]pplication of *Grady* [ ] leaves the Government with precisely the same option with respect to conspiracy cases that *Grady* left New York with respect to single occurrence cases—package in one indictment all of the offenses to be charged." *United States v. Calderone*, 917 F.2d 717, 726 (2d Cir.1990).

Although the principal question in *Calderone* was whether the conspiracy count in the second prosecution could survive, there was also a question whether the substantive counts could stand. The court held that the substantive counts also constituted double jeopardy, stating:

> Although [the defendants] were not charged with these specific crimes in the first indictment, they were nonetheless prosecuted for the *conduct* that supports these offenses. And under *Grady* they may not again be prosecuted for this conduct....

*Calderone*, 917 F.2d at 722 (emphasis added). Although these observations may seem favorable to Marquez, they do not support his argument because, as in *Russo*, the conduct that formed the basis of the second prosecution in *Calderone*, was conduct introduced into evidence by the government in the first prosecution. Indeed, the *Calderone* court specifically noted, "the Government has acknowledged that proof of the events alleged in counts two through twenty-eight was introduced in the [earlier] trial to prove conspiracy,

thereby precluding prosecution of [those events in these counts]"). *Calderone*, 917 F.2d at 726 (Newman, J., concurring). In addition, in its consideration of the conspiracy count, the court emphasized the fact that the conduct relied upon by the government in prosecuting the second conspiracy charge was the same conduct proved originally in the first prosecution:

> It might be possible for the Government to prove that the defendants joined the *Calderone* conspiracy on the basis of conduct wholly distinct from the conduct relied on in the [previous] case to show that they joined [that alleged] conspiracy. But the Government has made no claim that it will rely on such distinct conduct.

*Calderone*, 917 F.2d at 725 (Newman, J., concurring). In the case at hand, the 1972 conduct prosecuted in the 1975 indictment was *not* charged, proven, or put in evidence in Marquez's first (i.e. 1974) indictment. *Calderone* thus does not help petitioner.

Petitioner's argument is a radical one. He contends that simply because he was acquitted of conspiracy charges alleged in the earlier prosecution, he is immune from prosecution for any narcotics related conduct he may have committed that happens to fall between the beginning and ending dates of that conspiracy. He asserts that "when the government proceeds to trial on a broad conspiracy charge spanning several years and several substantive acts as constituents, it may not later claim that certain omitted substantive acts represent conduct which was not prosecuted in the course of the larger conspiracy."

Nevertheless, although Marquez's contention is radical, it is not capricious and it is consistent with Judge Newman's admonition to prosecutors in *Calderone* to "package in one indictment all of the offenses to be charged." *United States v. Calderone*, 917 F.2d 717, 726 (2d Cir.1990). Successive prosecutions raise concerns that "the State with all its resources and power ... [will] make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a con-

tinuing state of anxiety and insecurity." *Grady v. Corbin*, 495 U.S. 508, 518, 110 S.CT. 2084, 2091, 109 L.Ed.2d 548 (1990). In addition, "[m]ultiple prosecutions also give the State an opportunity to rehearse its presentation of proof, thus increasing the risk of an erroneous conviction for one or more of the offenses charged." *Id.*

However, the implications of petitioner's construction of *Grady v. Corbin* go well beyond that decision and the Second Circuit's interpretation of *Grady* in *Russo* and *Calderone.* Petitioner's argument is that conduct never prosecuted, on which no evidence has been presented or argument made in a first trial, is nevertheless protected against later prosecution simply because it could have been presented in the earlier case. As a matter of law, petitioner's argument is without merit. Although he cites *Russo* and *Calderone,* they do not support his position. He relies on footnote 7 of *Grady v. Corbin* but the exception described in that footnote [6] does not alter the fact that, to constitute double jeopardy, the second prosecution must be based on the same conduct as the first prosecution. In this case, as noted many times above, the 1975 prosecution related exclusively to 1972 conduct which was not in any way covered by the 1974 prosecution.

The petition to vacate the 1975 conviction is denied. Certificate of probable cause is granted.

It is so ordered.

---

**6.** Footnote 7 states that "an exception may exist [from the usual prohibition of subsequent prosecutions of the "same conduct"] where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence." *Grady v. Corbin,* 495 U.S. at 516 n. 7, 110 S.Ct. at 2090 n. 7.