UNITED STATES, Appellee,

v.

William BIZANOWICZ, Defendant, Appellant.

No. 83–1902.

United States Court of Appeals, First Circuit.

Argued Aug. 7, 1984.

Decided Oct. 4, 1984.

Richard M. Passalacqua, Boston, Mass., by appointment of the Court, for defendant, appellant.

Paul F. Healy, Jr., Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PEREZ–GIMENEZ,* District Judge.

PEREZ–GIMENEZ, District Judge.

Appellant, William Bizanowicz, appeals from his criminal conviction. He and co-defendant Mario Antimone were indicted in a count that charged them with conspiring to embezzle and steal goods, specifically candy, constituting or moving as part of an interstate shipment of freight  Both appellant and Antimone were further charged with aiding and abetting each other in the theft of goods on three separate occasions, which goods were then moving as part of or constituting an interstate shipment of

* Of The District of Puerto Rico, sitting by desig-

freight. The indictment charges a violation of 18 U.S.C. §§ 2, 371 and 659.

There are two issues: whether at the time they were stolen the boxes of candy were moving in interstate commerce and constituted all or part of an interstate shipment; and whether the trial judge erred in permitting a tape containing a recorded telephone conversation between appellant and Steven Higgins, a truckdriver, to go into the jury room together with a tape player.

Appellant argues that the court erred in denying the motions and in allowing the tape player to enter the jury room. We affirm the judgment.

### I

The evidence taken in the light most favorable to the prosecution, *United States v. Gabriner*, 571 F.2d 48, 50 (1st Cir.1978), reveals the following.

In 1982, Borden Corporation (Deran), in Cambridge, Massachusetts, manufactured and boxed candy which was transported by tractor/trailer to Wilmington Warehouse, in Chelsea, Massachusetts. Thence, it would be shipped to its final destinations throughout the United States and, in particular, to points within a thirteen state area including the New England states. The bills of lading were made up at the Chelsea warehouse. On a daily basis the warehouse would have an insufficient inventory of a particular type of candy and the candy received from Cambridge would be immediately placed on a waiting truck going to an out-of-state destination. Over 90% of the candy manufactured at Deran's was sold and shipped outside Massachusetts.

On November 15, 1982, the president of Wilmington Warehouse went to the Kellaway Warehouse, in Somerville, Massachusetts where he found in excess of two complete trailer truck loads of Borden's candy. From dates stamped on the boxes, it was determined that the candy in Somerville was shipped from Deran to Chelsea on

nation.

September 29, October 29 and November 10, 1982.

Appellant was employed by the president of Wilmington for six years. From September 1981 until November 15, 1982, he was manager of the Wilmington Warehouse at Chelsea. As part of his duties, appellant would assign men to do the receiving and would take the receiving sheets and forward them to the front office for inventory and billing purposes. Thomas McConologue, the traffic manager who worked at Chelsea, was responsible for shipping the candy from the Chelsea warehouse. He testified at trial that some of the stolen candy recovered from Somerville would have been used to make up outgoing interstate shipments. By comparing the dates on the boxes of the Somerville candy with the bills of lading and Borden's records for the same dates, McConologue found that numerous interstate shipments were in fact delayed because of the insufficient amount of candy on hand at Chelsea. Some of the recovered candy were special order items produced for a private out-of-state label.

Appellant argues that none of the candy acquired an interstate flavor since at the time it was stolen, it was part of a purely intrastate shipment on a shuttle truck which transported candy only between the manufacturing plant in Cambridge and the warehouse in Chelsea. The sufficiency of the evidence is attacked only in relation to the status of this freight.

■ An essential element of the crime of embezzling or stealing goods under 18 U.S.C. § 659 and conspiracy to embezzle and steal such goods is that such goods 1) be moving as an interstate shipment, 2) be part of an interstate shipment, or 3) constitute an interstate shipment. *See United States v. Garber*, 626 F.2d 1144, 1147 (3d Cir.1980), *cert. denied*, 449 U.S. 1079, 101 S.Ct. 860, 66 L.Ed.2d 802 (1981); *United States v. Astolas*, 487 F.2d 275, 279 (2d Cir.1973), *cert. denied*, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974).

■ It is not necessary for the goods in question to be actually moving in interstate commerce at the time for an offense to lie under 18 U.S.C. § 659. *United States v. Wills*, 593 F.2d 285, 286 (7th Cir.), *cert. denied*, 441 U.S. 964, 99 S.Ct. 2413, 60 L.Ed.2d 1070 (1979); *United States v. Williams*, 559 F.2d 1243, 1247 (4th Cir.1977). Some factors to be considered in the determination of whether goods constitute an interstate shipment at the time they were stolen include 1) the physical location of the goods when stolen; 2) whether the goods had been delivered to a carrier at the time of the theft; 3) whether the owner of the goods had taken any steps to carry out an interstate shipment and 4) whether any shipping documents indicated that the goods would be transported interstate. *United States v. Astolas*, 487 F.2d at 279–80.

■ Another factor to be taken into consideration is the preservation of the congressional intent in enacting the statute, *United States v. Henneberry*, 719 F.2d 941, 946 (8th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1612, 80 L.Ed.2d 141 (1984), which intent is to protect and promote the flow of goods in interstate commerce. *See United States v. Parent*, 484 F.2d 726, 729 (7th Cir.1973), *cert. denied*, 415 U.S. 923, 94 S.Ct. 1427, 39 L.Ed.2d 479 (1974). The evidence establishes that the Somerville candy was part of an interstate shipment as defined in 18 U.S.C. § 659. As in *United States v. Henneberry, supra*, bills of lading had been made up at the Chelsea warehouse in anticipation of the shipment's arrival, which shipment never left the state. Certain items were special order items produced for an out-of-state private label. The loads had to leave as soon as they arrived at the warehouse. There is nothing to suggest that at least 90% and more likely between 93% and 94% of the stolen goods were not destined for out of state delivery in accordance with normal practices. Indeed, of approximately 45,000,000 pounds of candy produced, less than 5,000,000 pounds were shipped to points within the state.

The interstate nexus of the candy having been established, appellant's argument fails in this respect.

 Appellant argues that the previously mentioned tape was never actually admitted into evidence. We disagree. The tape was initially marked as Exhibit 13 for identification. The government thereafter laid the proper foundation for its admission. *See United States v. Nashawaty,* 571 F.2d 71, 75 (1st Cir.1978). The government moved the tape and transcript of the conversation into evidence. The trial judge said, "I don't think there is any problem with the admissibility of the tape." Citing Rule 1002 of the Federal Rules of Evidence, he excluded the transcript of the tape without objection. The judge then ordered the tape played before the jury, and this was done. Our review of the trial transcript reveals that at least *a quo* there was no doubt that Exhibit 13 was admitted, notwithstanding the judge's failure to instruct the courtroom deputy directly to mark the tape as an exhibit. The present contention—that the tape never went into evidence—was not made at the trial. The only objection preserved below was to the propriety of placing the tape, together with a tape player, in the jury room. This was objected to on the ground it was too prejudicial.

No showing of prejudice has been made and no abuse of discretion is apparent in the manner in which the trial court allowed the tape and player to go to the jury. The tape had already been played to the jury. Ordinarily, exhibits are sent to the jury room. An audio exhibit should not be relegated to muteness because it can be perused only through the use of a tape player. *See United States v. Humphrey,* 696 F.2d 72, 75–76 (8th Cir.1982), *cert. denied,* 459 U.S. 1222, 103 S.Ct. 1230, 75 L.Ed.2d 463 (1983).

While the tape should, of course, have been marked as an exhibit, the error is at best harmless. *Cf. United States v. Costa,* 691 F.2d 1358, 1362 (11th Cir.1982).

*The judgment of the district court is hereby affirmed.*