**UNITED STATES of America,**

**v.**

**Jose MUYET, a/k/a "Raze,"
et al., Defendants.**

**No. S3 95 Cr. 941 (PKL).**

United States District Court,
S.D. New York.

Feb. 20, 1998.

Mary Jo White, U.S. Attorney for the Southern District of New York, New York City (Thomas M. Finnegan, Jay Holtmeier, of counsel), for the U.S.

Sanford M. Katz, New York City, for Frank Sosa.

## OPINION AND ORDER

LEISURE, District Judge.

Defendant Frank Sosa ("Sosa") was convicted with his codefendants on April 10, 1997, following a five-month jury trial, of various offenses arising out of his participation in the so-called "Nasty Boys" criminal enterprise, as more particularly described below. Sosa moves this Court pursuant to Rule 29 of the Federal Rules of Criminal Procedure, seeking dismissal of the charges against him based on insufficiency of evidence. For the reasons stated below, the motion is denied.

## BACKGROUND

According to the evidence adduced at trial, Jose Muyet, a/k/a "Raze," along with his brother John Muyet, a/k/a "Buddha," operated a drug gang known as the Nasty Boys in the Bronx, New York, for a period of several years. The gang operated from an apartment building known as the Airborne building, and sold both heroin and crack. The Nasty Boys resorted to violence quickly and often to maintain order, stifle competition, and protect their business. Sosa, a/k/a "Frankie," was a member of the Nasty Boys.

The jury convicted Sosa of narcotics conspiracy, Title 21, United States Code ("U.S.C."), section 846 (Count Thirty of the Indictment) and illegal use and carrying of a firearm, 18 U.S.C. § 924(c) (Count Forty-two). The jury acquitted Sosa of the RICO charges (Counts One and Two), the violent crimes in aid of racketeering charges (Counts Eleven to Fourteen), and firearms charges relating to the racketeering charges (Counts Thirty-four and Thirty-five).

## DISCUSSION

### I. Legal Standard for Rule 29 Motions

When a defendant moves for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the Court must determine, based on all of the relevant evidence, whether a rational juror "might fairly conclude guilt beyond a reasonable doubt." *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir.1984) (quoting *United States v. Taylor*, 464 F.2d 240, 243 (2d Cir.1972)); *accord United States v. Bloome*, 784 F.Supp. 23, 25 (E.D.N.Y.1992). The Court must resolve all reasonable inferences in favor of the Government, *see Mariani*, 725 F.2d at 865, and resolve all issues of credibility in favor of the jury's verdict. *See, e.g., United States v. Weiss*, 930 F.2d 185, 191 (2d Cir.1991); *United States v. Roldan–Zapata*, 916 F.2d 795, 802 (2d Cir.1990). To succeed on the motion, the defendant[s] must persuade the Court that, "viewing the evidence in the light most favorable to the government, ... no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Leslie*, 103 F.3d 1093, 1100 (2d Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 1713, 137 L.Ed.2d 837 (1997) (quoting *United States v. Taylor*, 92 F.3d 1313, 1333 (2d Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997)) (internal quotation marks omitted).

## II. Sosa's Challenges to His Narcotics Conspiracy Conviction

Defendant Sosa argues that the Court must set aside his narcotics conspiracy conviction for a number of reasons. He claims that: (1) insufficient credible evidence exists to sustain the charge; (2) no evidence exists that Sosa conspired to distribute crack; and (3) Sosa suffered spillover prejudice from voluminous evidence relating to violent crimes committed by his codefendants. Each of Sosa's contentions are devoid of merit, and a reasonable juror could conclude that Sosa is guilty of narcotics conspiracy.

### A. Sosa's Claim of Insufficient Credible Evidence

Sosa claims that the jury necessarily rejected as lies the testimony of Government cooperating witnesses Juan Machin and Luis Quinones regarding the Wolfpack shooting and the Antonio Flores murder, since the jury acquitted Sosa of the charges relating to these incidents. Defendant contends that because the testimony of Machin and Quinones also implicated Sosa in the narcotics conspiracy, the Court should accordingly overturn the jury's verdict on that count. Sosa additionally argues that the other evidence implicating him in the narcotics conspiracy likewise lacks credibility. Specifically, Sosa claims that the testimony of Government cooperating witnesses Abelardo Ramos and Robert Corona does not sufficiently support that of Machin and Quinones, and that other evidence discredited the Government's witnesses. This "other evidence" includes the inability of Rolondo Gomez to identify Sosa, the fact that Sosa had not been previously arrested for drug trafficking, the absence of Sosa from any group photograph of the Nasty Boys, and conflicting evidence about Sosa's "tag" name.

Sosa's arguments are misplaced in the context of a Rule 29 motion. Defendant is asking the Court to substitute the defendant's interpretation of the evidence for that of the jury. The Second Circuit indicated in *Mariani* that the strict rules that Court applies with regard to a Rule 29 motion are necessary to avoid judicial usurpation of the jury function. *See Mariani,* 725 F.2d at 865. "The Court should not substitute its own determination of the credibility of witnesses, the weight of the evidence, and the reasonable inferences to be drawn for that of the jury." *Id.*

The Court's function in deciding a Rule 29 motion is to determine whether a reasonable jury could declare Sosa guilty of the narcotics conspiracy. Undoubtedly, the reasonable jury could make such a determination. The testimony of Machin and Quinones clearly linked Sosa to drug trafficking. Sosa speculatively claims that the jury rejected the testimony of Machin and Quinones concerning the violent activities of the Nasty Boys as lies. Even if this were true, which the Court does not know, there is no reason that the verdict of guilty for the narcotics conspiracy count was unreasonable. The Court specifically instructed the jury: "If you find that a witness has given false testimony, you may reject that witness' entire testimony, or you may accept such part of that testimony that you find to be credible." Plus, Corona testified that Sosa was one of the night managers of the drug operation at the Airborne building, providing additional evidence to the already ample amount from which a reasonable jury could conclude that Sosa conspired to distribute narcotics. This Court will not second-guess the credibility determinations of the jury.

### B. Sosa's Claim that He Did Not Conspire to Distribute Crack

Sosa contends that the Court must dismiss the narcotics conspiracy charge because no evidence indicates that he distributed crack. The indictment framed the charge so that a determination that Sosa conspired to distribute heroin *or* crack was sufficient to sustain a conviction. The defendant complains, however, that the nature of the charge leaves him unsure of whether the jury convicted him of conspiracy to traffic heroin, crack, or both. This grievance is irrelevant. The Court instructed the jury that in order to convict a defendant on this charge, it must conclude that the defendant knew in general terms that he was participating in a conspiracy to distribute narcotics. Based on the evidence

presented at trial, a reasonable jury could clearly conclude that Sosa was guilty of narcotics conspiracy.

## C. *Sosa's Claim of Spillover Prejudice*

Finally, Sosa argues that the Court must set aside his narcotics conspiracy conviction because of the spillover prejudice he claims he suffered from the evidence introduced at trial of violent crimes committed by his codefendants. Despite the opportunity, Sosa did not move pre-trial for a severance, but only now comes forward with this protestation following his conviction.

■ "A defendant who claims that he is entitled to a new trial because of prejudicial spillover bears an extremely heavy burden." *United States v. Villegas*, 899 F.2d 1324, 1347 (2d Cir.1990); *see also United States v. Friedman*, 854 F.2d 535, 563 (2d Cir.1988). To determine whether a defendant has suffered unfair spillover prejudice, the Court will look to a number of factors. One consideration is the extent to which a court, at a single defendant trial, would nonetheless admit the evidence presented at the joint trial because of the conspiratorial nature of the alleged activity. *See Villegas*, 899 F.2d at 1347; *see also United States v. Bari*, 750 F.2d 1169, 1178 (2d Cir.1984). Another consideration is whether the court instructed the jury to assess the evidence against each defendant separately from the evidence against other defendants. *See Villegas*, 899 F.2d at 1347; *see also United States v. Carson*, 702 F.2d 351, 367 (2d Cir.1983). The final consideration is whether there is an indication that the jury heeded these instructions. *See Villegas*, 899 F.2d at 1347; *see also United States v. Casamento*, 887 F.2d 1141, 1153 (2d Cir.1989). An example of such an indication is different verdicts for different defendants. *See Villegas*, 899 F.2d at 1347. The Court evaluates these factors in totality, and no one factor is dispositive. *See id.*

The Government charged Sosa, along with his codefendants, with violations of RICO. To prove a RICO case, the Government must show the existence of an enterprise and a pattern of racketeering activity. In a case evaluating a similar claim of spillover prejudice, the Second Circuit observed that "[p]roof of these elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts." *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir.1992). The evidence introduced at trial which showed the routine resort to vicious crimes was relevant to the charges against Sosa because it tended to prove the existence and nature of the RICO enterprise, the Nasty Boys. Also, since the Nasty Boys were a criminal enterprise, an act performed in furtherance of the group automatically carries with it the threat of continued racketeering activity. *See United States v. Indelicato*, 865 F.2d 1370, 1383–84 (2d Cir.1989). The same evidence, therefore, was relevant to show a pattern of racketeering activity.

■ The activity which led to criminal charges against Sosa was very much conspiratorial in nature. The jury acquitted Sosa of the RICO counts, and convicted him of narcotics conspiracy. Although the jury acquitted the defendant of some of the charges, the Court properly admitted the evidence, and the majority would have been so admitted in a separate trial of Sosa alone, due to the elements which the Government must prove in order to gain a RICO conviction.

Analysis of the other considerations for spillover prejudice also lead to the conclusion that Sosa suffered no prejudice as a result of the evidence introduced concerning acts committed by others. The Court carefully instructed the jury to "compartmentalize" the evidence introduced. That is, the jury considered the evidence as to each defendant individually.[1] Finally, the jury clearly heeded the Court's instructions. The jury acquit-

---

1. In anticipation of the jury charge at the end of the case, the Court reiterated several times during the trial the limiting instruction: "You must consider each defendant separately and you must reach a separate decision for each defendant, based solely on the evidence or lack of evidence regarding that particular defendant," consistent with Judge Leval's charge that was found to have "eliminated any possibility of prejudicial spillover" in *United States v. Tutino*, 883 F.2d 1125, 1131, 1132 (2d Cir.1989).

ted Sosa of a number of charges listed in the indictment. He was found not guilty of the RICO counts, four counts of violent crimes in aid of racketeering, and the firearms charges. The jury clearly weighed the evidence against each defendant for each charge, and arrived at its verdicts. Sosa, who at no time asked for a separate trial, did not suffer spillover prejudice sufficient to warrant action by the Court to set aside the jury's verdicts. The Court denies Sosa's motion to set aside his narcotics conspiracy conviction.

### III. *Sosa's Challenge to His Firearms Conviction*

 Sosa next argues that the evidence presented at trial was insufficient to sustain his conviction under 18 U.S.C. § 924(c), use or carrying of a firearm in relation to a drug trafficking crime. The key word in the statute for the purposes of Sosa's motion is "or". An individual violates § 924(c) through either "use" *or* "carrying" of a firearm in relation to a drug trafficking offense. *See United States v. Canady*, 126 F.3d 352, 357 n. 2 (2d Cir. 1997), *petition for cert. filed* (U.S. Dec. 23, 1997)(No. 97–7397). The meaning of "carrying" is self-evident. In *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 505, 133 L.Ed.2d 472 (1995), the Supreme Court held that liability under the "use" prong of § 924(c) "requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." The Court stated that its holding was logical because it preserved separate and distinct meanings for "use" and "carry".

> Under the interpretation we enunciate today, a firearm can be used without being carried, *e.g.*, when an offender has a gun on display during a transaction, or barters with a firearm without handling it; and a firearm can be carried without being used, e.g., when an offender keeps a gun hidden in his clothing throughout a drug transaction.

*Id.* at 507.

 Juan Machin testified that he saw Sosa carrying a firearm while acting as a manager of the Nasty Boys drug operation, giving drugs to the pitcher (person who sold the drugs to the buyers) in the lobby of 1314 Seneca Avenue, a distribution spot of the Nasty Boys. Additionally, there was testimony that Sosa was the night shift manager of the Nasty Boys, and that managers were responsible for handing the drugs and guns over to the next shift manager. Based on this evidence, a reasonable jury obviously could conclude beyond a reasonable doubt that Sosa "carried" a firearm in relation to a drug trafficking offense. Therefore, liability under § 924(c) is appropriate. Because the statute only required the Government to prove evidence sufficient to show "carrying" *or* "use" of a firearm, there is no need to determine whether a reasonable jury could determine that Sosa "used" a firearm in relation to drug trafficking activity. The Court denies Sosa's motion to set aside his firearms conviction.

### CONCLUSION

For the reasons stated above, the defendant's motion pursuant to Rule 29 of the Federal Rules of Criminal Procedure is HEREBY DENIED.

**SO ORDERED.**